United States District Court
Southern District of Texas

**ENTERED**

May 19, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADRIAN ALGERIBIYA, Individually and on behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. H-19-2863 |
| PUMPCO ENERGY SERVICES, INC., | § § | |
| Defendant. | § § | |

**MEMORANDUM AND RECOMMENDATION**

Before the Magistrate Judge in this case that has been referred by the District Judge for all pretrial proceedings is Plaintiff's Motion for Class Certification and Expedited Discovery (Document No. 26). Having considered that motion, the response, the reply and the recently filed Status Report, which clarifies that Plaintiff is seeking certification of a class of "All field workers who were subjected to Pumpco's Travel Time Update Policy dated December 1, 2018," and the applicable law, which provides a very lenient standard for certification, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Plaintiff's Motion for Class Certification and Expedited Discovery (Document No. 26) be GRANTED.

This action arises out of alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Plaintiff Adrian Algeribiya ("Algeribiya"), a former employee of Defendant Pumpco Energy Services, Inc., alleges in his original Complaint, filed on behalf of himself and all others similarly situated, that he was not paid overtime for a portion of the hours he worked each

week.[1]  According to Algeribiya, starting in "approximately January 2019, Defendant[] implemented a new pay policy: 'drive time' hours from location to location would not be considered in determining his entitlement to overtime and would only be paid at a straight time rate."  This new policy, Algeribiya contends, resulted in Defendant not paying him, and those similarly situated, with all the overtime wages they are due under the FLSA.

In Plaintiff's Motion for Class Certification and Expedited Discovery (Document No. 26), Plaintiff sought an Order conditionally certifying this FLSA case as a collective action for "All operators and any other employee who was not paid overtime and employed by [Defendant] Pumpco during the last three years."  Given that broad class definition, and Plaintiff's statements in his Reply that he is only requesting "certification of a class of workers who were affected by Pumpco's travel time policy," Reply (Document No. 33) at 1, Plaintiff was ordered file a Status Report containing a class description that aligned with the contents of Plaintiff's Reply.  Plaintiff has now done so, with the Status Report stating that he was only seeking certification of the following class: "All workers who were subjected to Pumpco's Travel Time Update Policy dated December 1, 2018."  Status Report (Document No. 37) at 1.

In support of the Motion for Class Certification, Plaintiff submitted his own Declaration and the Declaration of Luis Landeros, Jr.  Algeribiya states in his Declaration, in relevant part:

> 10.    During my employment with Pumpco, I was paid on an hourly basis along with all other machine/equipment operators.  My last rate of pay was $18.00

---

[1] Algeribiya's original Complaint named both Superior Energy Services, Inc. and Pumpco Energy Services, Inc. as Defendants.  A short time after the Complaint was filed, having ascertained that Defendant Superior Energy Services was not "the proper employer for Plaintiff," Plaintiff filed a Motion to Dismiss Defendant Superior Energy Services, Inc.  That motion was granted (Document No. 18), and Plaintiff's claims against Defendant Superior Energy Services, Inc. were dismissed without prejudice.

per hour. For the entirety of my employment, I was required to clock in each morning once we arrived at the location and clock out at the location at the end of our day. Our drive time to and from the location was not accurately recorded. Mr. Fears was responsible for documenting our drive time to and from the location. Often times, our actual drive time was not accurately reflected in our paychecks. In fact, on most if not all of my paychecks, I did not receive compensation for all of my drive time to and from the location.

11.     In or around the last quarter of 2018, Mr. Fears announced that we would no longer receive overtime pay for our drive time hours. In other words, the number of hours that we spent traveling to and from the location each day was not counted towards Pumpco's obligation to pay overtime on a weekly basis.

12.     For example, if during a week I worked a total of 55 hours, 45 on location and 10 in driving to and from the location, I would only be paid overtime for 5 hours and would receive pay at my straight time rate for 50 hours.

13.     During my employment with Pumpco, I routinely worked more than forty hours in a workweek, but I was not paid overtime at one and one-half times my regular rate for all hours that I worked beyond forty in a workweek.

14.     Based on my experiences and my conversations with my coworkers, I believe there would be others that would want to join this lawsuit if they were made aware of it and given an opportunity to join.

(Document No. 26-1). Luis Landeros, Jr. similarly states in his Declaration:

9.     Throughout my employment with Pumpco, I have been paid on an hourly basis along with all other machine/equipment operators. My rate of pay is $18.50 per hour. For the entirety of my employment, I have been required to clock in each morning once we arrived at the location and clock out at the location at the end of our day. Our drive time to and from the location was not accurately recorded. Mr. Franco was responsible for documenting our drive time to and from the location. Often times, our actual drive time was not accurately reflected in our paychecks. In fact, on most if not all of my paychecks, I did not receive compensation for all of my drive time to and from the location.

10.     In or around the last quarter of 2018, Mr. Franco provided a printout of the new policy which stated that we would no longer receive overtime pay for our drive time hours. In other words, the number of hours that we spent traveling to and from the location each day was not counted towards Pumpco's

obligation to pay overtime on a weekly basis.

11.    For example, if during a week I worked a total of 55 hours, 45 on location and 10 in driving to and from the location, I would only be paid overtime for 5 hours and would receive pay at my straight time rate for 50 hours.

12.    During my employment with Pumpco, I routinely worked more than forty hours in a workweek, but I was not paid overtime at one and one-half times my regular rate for all hours that I worked beyond forty in a workweek.

13.    Based on my experiences and my conversations with my coworkers, I believe there would be others that would want to join this lawsuit if they were made aware of it and given an opportunity to join.

(Document No. 26-2).

In response to Plaintiff's Motion for Conditional Certification, Defendant primarily argued that the class proposed was far broader than the allegations in the case. Pumpco then argued that Algeribiya only needed the names and last known addresses of class members, that a single notice to class members should suffice, that class members' consents should be required to be filed in this case, and that the form of the notice is misleading and accurate. Following that Response, the contents of Algeribiya's Reply and Status Report make it clear that Algeribiya is only seeking a class made up of workers that have been affected by Pumpco's time travel policy. With that narrowed class definition, the undersigned concludes that Algeribiya has met the lenient threshold for conditional certification of this FLSA case.

Section 16(b) of the FLSA permits an employee to bring an action "for and [on] behalf of himself ... and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to such an action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought." *Id.* Thus, unlike a FED. R. CIV. P. 23 class action, a representative action under § 16(b) "follows an 'opt-in' rather than an

4

'opt-out' procedure." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir.1995). *See also LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir.1975).

In *Hoffman-La Roche, Inc. v. Sperling*, the U.S. Supreme Court held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) ... by facilitating notice to potential plaintiffs." 493 U.S. 165, 169 (1989). Although the Fifth Circuit has not directly addressed the meaning of "similarly situated" in this context, it has reviewed two methods used to resolve this issue. The first approach, the *Shushan* method, treats the "similarly situated" inquiry as coextensive with Rule 23 class certification, and therefore, courts should look at numerosity, commonality, typicality and adequacy of representation factors to determine whether to certify a class. *See Mooney*, 54 F.3d at 1214, citing *Shushan v. Univ. of Colo.*, 132 F.R.D. 263 (D.Colo.1990). The second approach involves a two-stage class certification set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J.1987). *See Mooney*, 54 F.3d at 1213. The two-stage process consists of a "notice" stage followed later by a "decertification" stage. *Mooney*, 54 F.3d at 1213-14. During the "notice" stage, the Court determines whether notice of the action should be given to potential class members. *Id.* Since the evidence available is limited, the standard applied is a lenient one, usually resulting in "conditional certification" of a representative class, to whom notice is sent and who receive an opportunity to "opt-in." *Id.* at 1214. Generally, after the close of discovery, the defendant initiates the second stage by filing a motion for "decertification." *Id.* At this stage, the Court makes a factual determination utilizing the information accrued from discovery on whether the plaintiffs are "similarly situated." *Id.* If the Court finds that the plaintiffs are "similarly situated," then the case proceeds as a representative action. *Id.* If the Court finds that the plaintiffs are not "similarly situated," then the class is decertified, the "opt-in" plaintiffs are dismissed without prejudice, and

the original plaintiffs proceed to trial on their individual claims. *Id.*

Here, utilizing this two-stage process in this case, *see e.g. Cruz v. Conocophillips*, 208 F.Supp.3d 811, 816 (S.D. Tex. 2016) (Bennett, J.) (utilizing *Lusardi* approach); *Hernandez v. Robert Dering Construction*, LLC, 191 F.Supp.3d 675, 681 (S.D. Tex. 2016) (Hanks, J.) (utilizing *Lusardi* approach); *Dyck v. Precision Drilling Company, LP*, Civil Action H-19-1090 (S.D. Tex. Apr. 16, 2020) (Hanen, J.) (utilizing *Lusardi* approach), the undersigned concludes that Algeribiya has satisfied the lenient standard recognized in *Lusardi* for conditionally certifying this case. That lenient showing requires proof that: "1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; [and] (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted." *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 768 (S.D. Tex. 2015).[2]

The Declarations of Algeribiya and Landeros in support of the Motion for Conditional Certification meet that proof burden. Both Algeribiya and Landeros describe their manual labor activities as employees of Pumpco, and both describe the drive time policy upon which their overtime claim(s) are based. In addition, numerous consents that have already been filed in this case. *See* Document Nos. 6, 7, 9, 10, 13, 14, 25, 30 and 38. Upon this record, conditional certification of workers affected by the drive time policy is warranted.

As for the identifying information sought by Plaintiff, and Pumpco's assertion that only

---

[2]Noted by the Court in the April 17, 2020, Order in *Dyck v. Precision Drilling Company, LP*, Civil Action H-19-1090 (S.D. Tex) (Document No. 21 at 2 and footnote 1), while some courts require that a Plaintiff seeking conditional certification also offer proof that there are other aggrieved individuals who want to opt-in to the lawsuit, "the third element is non-statutory," and therefore it need only be shown that "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist [and] (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted."

names and last known addresses of class members is necessary, given the type of work done by Plaintiff, and the different locations at which Plaintiff and the class members worked, it is not unreasonable for Plaintiff to also seek email addresses. Pumpco should therefore provide, for members of the class, names, last known addresses, and email addresses (if they are available and ascertainable from the employees' employment records). As for the remainder of the issues raised by Pumpco relative to the manner and content of the notice, because both sides seem to believe that some consensus can be reached about those issues, *see* Response (Document No. 31) at 7; Reply (Document No. 33) at 3, additional time should be afforded to the parties to submit an agreed notice and protocol for providing that notice to members of the class.

Based on the foregoing, and the conclusion that Plaintiff has met the lenient burden for certification of this case, the Magistrate Judge

RECOMMENDS that Plaintiff's Motion for Class Certification and Expedited Discovery (Document No. 26) be GRANTED and that a class of "All field workers who were subjected to Pumpco's Travel Time Update Policy dated December 1, 2018," be conditionally certified as a class. In addition, Pumpco should be required to provide Plaintiff, within twenty-one (21) days after the entry of this Order, with the name, last known address and last known email address for each individual within that class. Additionally, within that same time period, the parties should confer about the content and manner of the notice to be provided to the class members, and provide the Court, if possible, with an agreed notice.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order

80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140, 144-145 (1985); *Ware v. King*, 694 F.2d 89, 91 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 19th day of May, 2020.

Frances H. Stacy
United States Magistrate Judge

8